UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CHARLES SAGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00379-JRS-MJD |
| | ) | |
| ROBERT E. CARTER, JR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON MOTION TO COMPEL**

This matter is before the Court on Plaintiff's Motion to Compel [Dkt. 62]. The Court, being duly advised, **DENIES** the motion for the reasons set forth below.

### I. Plaintiff's Allegations

Plaintiff alleges the following facts in his Amended Complaint.

Plaintiff began working for the Indiana Department of Correction ("IDOC") at the Putnamville Correctional Facility in 1987 as a correctional officer. Beginning in 2000, Plaintiff worked as a maintenance foreman. In 2017, Plaintiff's co-maintenance foreman, Kevin Daniels, "asked offenders in the metal shop to use scrap metal to make him a deer cart, which was approximately forty pounds and cost $2.50." [Dkt. 29 at 3.] The offenders did so and placed the cart outside of the metal shop, "where Daniels intended to keep it until he obtained permission of his supervisor to take it to his residence on state property." *Id.* At some point, Plaintiff "noticed an object made of metal" outside the metal shop. *Id.* An offender told Plaintiff the object was for Daniels. Plaintiff, who "was not aware what the object was or that it was made by the inmates," took the cart and dropped it off at Daniels' residence. *Id.*

Two IDOC investigators questioned Plaintiff about a deer cart made by inmates; Plaintiff "answered truthfully that he had no knowledge of a deer cart made by inmates and did not see it." *Id.* at 4. Nine days later, "the inmate that made the item being referred to as a deer cart told Sage that he had made the cart, that it had been set behind the maintenance workshop, and that he understood that it since had been moved to Daniels' house. This was the first time that Sage understood that the item he moved *was* the item investigators had referred to as a deer cart." *Id.* A few days later, the investigators re-interviewed Plaintiff. This time, they asked him about a cart that was stored at Daniels' residence, and Plaintiff "answered truthfully that he had taken the cart to Daniels' state house." *Id.* Three days later, Plaintiff's employment was terminated, "purportedly for not cooperating fully in a departmental investigation and/or providing false information in an investigation." *Id.* Defendants "subsequently alleged that [Plaintiff] violated the Indiana Department of Correction's Code of Ethics and Standards of Conduct, including improperly using Department property and/or failing to report the improper use of Department property, equipment, or resources." *Id.* at 5.

Plaintiff, who was 53 years old when his employment was terminated, alleges that he was terminated because of his age in violation of the Equal Protection Clause of the Fourteenth Amendment.

## II. Discussion

The investigation into the deer cart apparently was initiated by a maintenance employee at the prison, who "alleged that the cart was made at the prison and stored at Kevin Daniels' state house." [Dkt. 62 at 3.] At issue in the instant motion is whether Defendants must identify the maintenance employee in question. This information is responsive to Plaintiff's Interrogatory 3, which seeks the identity of each person known by the Defendants to have knowledge "regarding

the facts and circumstances surrounding the occurrence of the incidents referred to in Plaintiff's Amended Complaint." *Id.* at 2. Defendants object to providing the identity of the maintenance employee, whom they dub "the whistleblower," because his or her identity is irrelevant to the claims and defenses in this case and revealing the identify would put the whistleblower in danger of retaliation.

The Court agrees that the identity of the whistleblower is not relevant. Plaintiff argues that he "has never admitted to any misconduct herein, and the identity of the individual making this report, which prompted the investigation leading to Plaintiff's termination is relevant and could reveal motive adopted by the decisionmakers, to-wit the 'cat's paw.'" *Id.* at 4.

"In the employment discrimination context, the cat's paw theory of liability applies when a biased subordinate who lacks decision-making power uses the formal decision-maker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Woods v. City of Berwyn,* 803 F.3d 865, 869 (7th Cir. 2015) (citations omitted). However, "there must be 'some direct relation between the injury asserted and the injurious conduct alleged' that is neither 'too remote, purely contingent, or indirect.'" *Id.* (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011). Thus, "the chain of causation can be broken if the unbiased decision-maker conducts a meaningful and independent investigation of the information being supplied by the biased employee." *Id.* (citation omitted). "To avoid liability under a cat's paw theory, a decisionmaker is not required to be a paragon of independence. It is enough that the decisionmaker is not wholly dependent on a single source of information and conducts her own investigation into the facts relevant to the decision." *McDaniel v. Progress Rail Locomotive, Inc.*, ___ F.3d ____, 2019 WL 5057188, at *5 (7th Cir. Oct. 9, 2019).

3

In this case, Plaintiff acknowledges in his Amended Complaint that an independent investigation into his involvement with the deer cart was conducted—he was questioned twice by investigators, and he admitted that he had moved the cart to Daniels' residence. There is no dispute that the whistleblower's report did not implicate Plaintiff; it was a report about Daniels. There also is no dispute that Daniels was questioned by investigators, that he admitted that he had the deer cart made by offenders, and that he told investigators that Plaintiff had moved the cart to Daniels' house. Thus, even assuming that the whistleblower harbored discriminatory animus against Plaintiff based on his age, the fact is that it was an independent investigation (including information provided by Daniels and confirmed by Plaintiff) that led to Plaintiff's termination, not the whistleblower's report about Daniels.

The cat's paw theory simply is inapplicable to this case; "[t]o hold otherwise would be to rule that whenever a discriminatory subordinate makes an allegation or institutes a charge and the plaintiff-employee is fired, there are no steps the ultimate decision-maker could ever take to break that chain of proximate causation. That cannot be so." *Woods*, 803 F.3d at 869. Plaintiff does not articulate any other way in which the identity of the whistleblower is relevant to the claims or defenses in this case. Accordingly, the Court finds that the information is not discoverable.

### III. Conclusion

For the reasons set forth above, Plaintiff's motion to compel [Dkt. 62] is **DENIED**.

SO ORDERED.

Dated: 17 OCT 2019

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.